GLANCY PRONGAY & MURRAY LLP
Marc L. Godino (SBN 182689)
Keven F. Ruf (SBN 136901)
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160
Email:  mgodino@glancylaw.com
Email:  kruf@glancylaw.com

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MONIC SERRANO, AND DEBRA SHAW, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAMPBELL SOUP COMPANY<br><br>Defendant. | Case No:<br><br>**CLASS ACTION COMPLAINT**<br>   FOR VIOLATIONS OF:<br><br> **1.** CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CAL. BUS. &   PROF. CODE §§ §§1750 *et seq.*<br> **2.** CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§17200 *et seq.*<br> **3.** CALIFORNIA FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE §§ 17500, *et seq*<br> **4.** NEW JERSEY CONSUMER FRAUD ACT, NJSA 56:8-1, *et seq*<br> **5.** BREACH OF EXPRESS WARRANTY<br> **6.** BREACH OF IMPLIED WARRANTY<br> **7.**  INTENTIONAL MISREPRESENTATION<br> **8.** NEGLIGENT MISREPRESENTATION<br> **9.**  FRAUD BY OMISSION<br> **10.** FRAUD IN THE INDUCEMENT<br><br><br>**DEMAND FOR JURY TRIAL** |

## TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................... 1

II.     JURISDICTION AND VENUE ................................................................... 3

III.    PARTIES .................................................................................................... 4

IV.     FACTUAL ALLEGATIONS ...................................................................... 5

        1.      Defendant sells artificially-flavored sugar-water masquerading as fruit juice. ........................................................................................... 5

        2.      The Products violate federal and state law requiring labeling of artificial flavors ..................................................................................... 8

        3.      The Product labels affirmatively conceal that the Products are artificially flavored .............................................................................. 11

        4.      The Products also violate federal and state food-ingredient "presence or absence" laws ................................................................. 15

        5.      The Products also violate federal and state food-fortification policy and laws ............................................................................................. 17

        6.      Defendant has known since at least 2014 that the Products' labeling was deceptive ............................................................................ 19

        7.      Defendant's competitors label their products lawfully ................... 22

        8.      Plaintiffs and the Class pay a price premium for Defendant's misbranded Products ....................................................................... 22

V.      DELAYED DISCOVERY ......................................................................... 25

VI.     CLASS ACTION ALLEGATIONS ........................................................... 26

VII.    CAUSES OF ACTION .............................................................................. 31

FIRST CAUSE OF ACTION:  Violation of the Consumers Legal Remedies Act .......... 31

SECOND CAUSE OF ACTION: Violation of the Unfair Competition Law ................. 32

THIRD CAUSE OF ACTION:  Violations of False Advertising Law ......................... 35

Cal. Bus. & Prof. Code §§ 17500, *et seq*. (on behalf of the California Sub-class) .......... 35

FIFTH CAUSE OF ACTION:  Breach of Express Warranties ................................. 38

SIXTH CAUSE OF ACTION:  Breach of Implied Warranties ................................. 40

SEVENTH CAUSE OF ACTION:  Intentional Misrepresentation .............................. 42

i

EIGHTH CAUSE OF ACTION:  Negligent Misrepresentation .........................................44

NINTH CAUSE OF ACTION:  Fraud by Omission ........................................................46

TENTH CAUSE OF ACTION:  Fraud in the Inducement...............................................47

VIII.   PRAYER FOR RELIEF ........................................................................49

IX.     JURY DEMAND ................................................................................50

CLASS ACTION COMPLAINT

Monic Serrano and Debra Shaw ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through undersigned counsel hereby bring this action against Campbell Soup Company, and on information and belief and investigation of counsel, allege as follows:

## I.  **INTRODUCTION**

1.    This is a proposed consumer class action for the violation of state consumer protection, unfair competition, and false advertising statutes, as well as for breach of express and implied warranties, negligent and intentional misrepresentation, and fraud by omission and in the inducement.

2.    Defendant Campbell Soup Company ("Campbell" or "Defendant") manufactures, packages, labels, and sells a line of beverages called "V8 Splash."

3.    The V8 Splash products are labeled with names like, "Berry Blend," "Strawberry Kiwi," and "Fruit Medley."

4.    These products are marketed to families with children as wholesome, naturally-flavored, healthful fruit-juice beverages for kids.

5.    They are none of those things.

6.    Rather than wholesome, natural fruit-juice beverages as marketed, the "V8 Splash" products included in this action (the "Products") are almost entirely water and high fructose corn syrup, artificially flavored to taste like fruit juice.

7.    The Products are labeled as if they were solely naturally-flavored beverages, with the names of fruits and berries and photo-realistic images of fresh, ripe, natural fruits and berries.

8.    Instead the Products are predominantly water and sweeteners, artificially flavored to mimic the taste of fruit.

9.    The Products contain at most token amounts, 1-2% *or less*, of the juice of any of the fruits and berries shown on the labels.

10.    This quantity is not enough to make any of the Products taste like any of the fruits or berries displayed on the labels.

1

11.     Some varieties of the Products contain <u>no fruit juice whatsoever</u>:  just sugar-water and flavorings with a token amount of reconstituted dried carrot or sweet potato juice.

12.     The "V8 Splash Berry Blend" Product, for example, features attractive pictures of fresh, ripe strawberries, blackberries, and raspberries on the label, but contains no fruit or berry juice whatsoever – no strawberry, no blackberry, no raspberry juice, no fruit of any kind.

13.     "V8 Splash Berry Blend" is a "blend" of 0.00% fruit or berry juice.

14.     To mimic the taste of the missing fruit, Defendant adds an undisclosed artificial flavor.

15.     The artificial flavoring simulates, resembles, and reinforces the characterizing tart flavors of the fruits and berries that are listed and shown on the labels but are absent from the Products.

16.     The Product labels are designed to lead reasonable consumers to believe the beverages consist of and are flavored solely with natural fruit and fruit juices – or at least contain *some* fruit juice.

17.     Defendant violates multiple states' consumer protection laws by misbranding the Products and by failing to disclose and actively concealing from consumers that the Products contain artificial flavoring, and inducing consumers to believe that the Products contain significant amounts of healthful fruit juice when those Products instead are artificially flavored sugar-water with either minuscule amounts of fruit juice or no fruit juice at all.

18.     Real fruits contain important nutrients:  natural vitamins and minerals, enzymes and fiber and prebiotics.

19.     High-sugar beverages contain none of these things but instead prevent effective metabolism and rob the body of these important nutrients. They are not healthy for children, and neither are ultra-sweet artificially-sweetened beverages.

CLASS ACTION COMPLAINT

20. These Products are both:  they are highly-sugared *and* artificially sweetened, artificially-flavored imitation fruit juice misleadingly labeled and sold to consumers as if they were actual fruit-juice beverages.

21. Plaintiffs, who purchased the Products multiple times and were deceived by Defendant's unlawful and misleading labeling and advertising, bring this action on their own behalf and on behalf of those similarly situated to halt and to remedy Defendant's unlawful conduct.

22. On behalf of the Class as defined herein, Plaintiffs seek an order compelling Defendant to, *inter alia*: (1) cease falsely advertising and labeling the Products in violation of state consumer protection laws; (2) inform consumers regarding the Products' composition and misbranding; (3) award Plaintiffs and the other Class members restitution, actual damages, and punitive damages; and (4) pay all costs of suit, expenses, and attorney fees.

## II.   <u>JURISDICTION AND VENUE</u>

23. Plaintiffs bring this proposed class action in this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005).

24. This Court has subject matter jurisdiction over this proposed class action under CAFA, 28 U.S. Code § 1332(d), which provides the federal courts with original jurisdiction over any class action in which any member of the plaintiff class is a citizen of a state different from any defendant and the matter in controversy exceeds $5 million in the aggregate, exclusive of interest and costs.

25. Minimal diversity as required by 28 U.S.C. §§ 1332(a)(1), (d)(2)(A) is satisfied as Plaintiffs as well as other members of the proposed class are citizens of states other than New Jersey and Defendant is a citizen of New Jersey.

26. The jurisdictional amount in controversy is satisfied. Plaintiffs allege on information and belief that the total claims of the members of the proposed Class in this action exceed $5 million in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5).

27.    This matter is not a "local controversy" pursuant to 28 U.S.C. §1332(d)(5)(B). Plaintiffs allege on information and belief that more than two-thirds of the members of the proposed Class are citizens of states other than New Jersey and that the proposed Class contains more than 100 persons.

28.    This Court has both general and specific personal jurisdiction over the Defendant.

29.    This Court has personal jurisdiction over Defendant because Campbell has affirmatively established and maintained contacts with the State of California and is registered to do business in California.

30.    This Court further has specific personal jurisdiction arising from Defendant's decision to market, distribute, and sell the products that are the subject of this action in California.

31.    Defendant has sufficient minimum contacts with this State and sufficiently avails themselves of the markets and legal protections of this State through their promotion, marketing, sales, and distributing of the Products within the State to render the exercise of jurisdiction by this Court reasonable and fair.

32.    Venue is proper in this County and this judicial district pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in this district and Plaintiff Monic Sanchez purchased the subject products of this action in this judicial district. Defendant conducts business and engages in substantial transactions here, and many of the transactions complained of herein occurred in this district including specifically the transactions between Plaintiff and Defendant.

### III.    PARTIES

33.    Defendant Campbell Soup Company ("Defendant" or "Campbell") is incorporated in New Jersey and maintains a corporate headquarters in Camden, New Jersey.

34.    All fundamental decisions regarding Product formulations and ingredients and Product packaging, labeling, advertising, and marketing are controlled by Defendant

4

at Defendant's corporate headquarters in New Jersey.

35.    Defendant advertises, markets, distributes, and sells the Products in New Jersey, California, and throughout the United States.

36.    Plaintiff Monic Serrano is a resident and citizen of California, and purchased the Products multiple times in Los Angeles, California, for personal and household consumption.

37.    Plaintiff Debra Shaw is a resident and citizen of California, and purchased the Products multiple times in Riverside County, California, for personal and household consumption.

## IV.    FACTUAL ALLEGATIONS

### 1. Defendant sells artificially-flavored sugar-water masquerading as fruit juice.

38.    Defendant Campbell Soup Company manufactures, packages, labels, markets, and sells a line of beverages called "V8 Splash."

39.    These products are marketed to families with children as wholesome, naturally-flavored, healthful fruit-and-vegetable-juice beverages for kids.

40.    Rather than wholesome, natural fruit-juice beverages as advertised, the "V8 Splash" products described in this action (the "Products") consist almost entirely of water and high-fructose corn syrup, artificially flavored to taste like fruit juice.

41.    These Products are labeled as if they contain only natural juices and flavors but in fact are highly-sweetened beverages containing undisclosed artificial flavoring made from petrochemicals.

42.    The Products violate federal FDA regulations and multiple state laws. They are misbranded and illegal to sell in the United States.

43.    Below is a true and accurate representation of the "V8 Splash Berry Blend" product.

CLASS ACTION COMPLAINT

44.    The "Berry Blend" Product's front label shows photographic images of ripe strawberries, raspberries, and blackberries, as well as a slice of what appear to be a carrot and sweet potato.

45.    The "V8 Berry Blend" Product consists almost entirely of water and high fructose corn syrup with token amounts of reconstituted dried carrot and sweet potato juice, and artificial flavoring and synthetic "Red 40" dye added to make it appear to be fruit juice.

46.    The ingredient list for this Product is, "Water, high fructose corn syrup, sweet potato juice concentrate, carrot juice concentrate, natural flavoring, citric acid, malic acid, vitamin C (ascorbic acid), Sucralose, Red 40, niacinamide (vitamin B3), licorice extract (for flavor), pyridoxine hydrochloride (vitamin B6), cyanocobalamin (vitamin B12)."

47.    The Product contains no fruit juice of any kind. It is water, high-fructose corn syrup, artificial sweetener, and added flavoring, with 2-3% or less each of reconstituted dried carrot and sweet potato juice.

48.    The labeled "malic acid" is actually dl-malic acid, a synthetic petrochemical flavoring compound, an artificial flavor added to make the product resemble fruit juice.

CLASS ACTION COMPLAINT

49.    To label this product "Berry Blend" with pictures of fresh, ripe, actual berries, and to affirmatively conceal that the Product is artificially flavored, is intentionally misleading.

50.    It also violates federal labeling regulations and multiple state laws.

51.    The covert added artificial flavoring, as discussed further below, is required by federal and state law to be disclosed prominently on the front label.

52.    Instead, the Product unlawfully is labeled as if it contained only natural flavors.

53.    The other Products included in this action are similarly unlawfully labeled and misbranded with names like "Strawberry Kiwi."[1]

54.    The Products are all labeled as if they were solely naturally-flavored beverages, with the names of fruits and berries and photo-realistic images of fresh, ripe, natural fruits and berries.

55.    The Products all fail to disclose that they are artificially flavored and contain little or no actual fruit juice, affirmatively and intentionally misrepresenting the Products as solely naturally flavored.

56.    Consumers buy these Products because they are labeled and marketed as if they contain substantial amounts of healthful fruit juice:  the advertised fruit and berry juices.

57.    Consumers are misled, as Defendant intends, and are damaged thereby.

58.    None of the Products contain sufficient fruit or berry juice to make the beverage taste anything like the fruits named and shown on the labels.

59.    Instead, the Products are flavored with undisclosed artificial flavoring that creates, simulates, resembles, and reinforces the misleadingly labeled and depicted fruits and berries.

---

[1] The Products include V8 Splash Berry Blend, Diet Berry Blend, Tropical Blend, Diet Tropical Blend, Strawberry Kiwi, Cherry Pomegranate, and Fruit Medley.

CLASS ACTION COMPLAINT

## 2. The Products violate federal and state law requiring labeling of artificial flavors

60.    An artificial flavor is "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 CFR 101.22(a)(1).

61.    The dl-malic acid that Defendant adds to the Products is made from petrochemicals, predominantly benzene or butane, with highly toxic intermediates and byproducts.[2]

62.    Dl-malic acid is not made from "a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material. . . ."

63.    There is a naturally-occurring version of malic acid.

64.    The dl-malic acid that Defendant puts in the Products, however, is not natural; it is a synthetic petrochemical manufactured in a chemical factory from petroleum feedstocks.

65.    Artificial dl-malic acid tastes similar to natural malic acid; it has never, however, been extensively tested for safety in human food.

66.    Natural malic acid is referred to colloquially as "apple acid."[3] Natural malic acid is found in apples, cherries, berries, and other tart fruits; it has a unique tart flavor that helps create and is associated with the taste of these fruits.

67.    All the fruits and berries the Products are named for and that are shown on the Product labels would – if they were actually present in the Products – contain natural malic acid that would contribute to the tart flavor consumers expect from such fruits and berries.

68.    Natural malic acid is a dominant fruit acid and fruit flavor in the fruits and

---

[2] Dl-malic acid is also known as 2-hydroxybutanedioic acid, hydroxysuccinic acid, or 1-hydroxy-1,2-ethanedicarboxylic acid.
[3] U.S. Department of Agriculture, Summary of TAP Reviewer's Analysis, April 2003, *available at* https://www.ams.usda.gov/sites/default/files/media/L-Malic%20Acid%20TR.pdf, pp. 3-5.

berries named and shown on the Products' labels.

69.    Under federal regulations, any recognizable primary flavor identified on the front label of a food Product is referred to as a "characterizing flavor."

70.    Federal regulations state that if "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means" then such flavor shall be considered the characterizing flavor. *See* 21 C.F.R. 101.22(i).

71.    All of the fruits and berries listed on the Products' front-labels are primary recognizable flavors and are therefore by law characterizing flavors of the Products.

72.    If a product's characterizing flavor is not created exclusively by the named ingredient, the product's front label must state that the product includes either natural flavor or artificial flavor or both.

73.    If any artificial flavor "simulates, resembles or reinforces" the characterizing flavor in the product, the food must be prominently labeled as "Artificially Flavored." 21 C.F.R. 101.22(i) (3), (4).

74.    Defendant admits that the malic acid used in their products is not natural. [4]

75.    Defendant admits that malic acid is added to its products for flavor. Defendant states that they use artificial malic acid for flavoring "in products where a tart taste is expected . . . ."[5]

76.    A commercial food laboratory confirmed that the "malic acid" in the Products is artificial dl-malic acid.

77.    The tart flavor of artificial dl-malic acid simulates, resembles, and reinforces the Products' characterizing tart fruit flavors.

78.    The dl-malic acid in the Products provides the characterizing tart flavor of the fruits and berries listed and shown on the Products' front labels.

79.    The dl-malic acid that Defendant adds to the Products is an artificial flavor

---

[4] Campbell, https://www.campbells.com/v8/v8-blends-ingredients, last visited September 8, 2023.
[5] Id.

9

CLASS ACTION COMPLAINT

under federal regulations and state law.

80. Food ingredient suppliers offer both the natural and artificial versions of the flavoring ingredient malic acid.

81. Defendant uses artificial dl-malic acid as a flavoring agent in the Products because it is cheaper than using natural fruits, fruit juices or flavors.

82. 21 C.F.R. 101.22(c) require all foods containing artificial flavoring to include:

> A statement of artificial flavoring . . . [which] shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such a statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

83. Because the Products contain added artificial flavorings that simulate, resemble, and reinforce the Products' characterizing fruit and berry flavors, the Products' front labels are required by law to disclose the presence of those artificial flavorings rather than deceptively claim that the Products' flavor is conferred only by natural flavorings.

84. The Products all violate 21 C.F.R. 101.22(c).

85. California's Sherman Law incorporates federal FDA regulations verbatim.

86. Conduct that violates FDA regulations therefore by definition also violates California law.

87. In addition, under California's Health & Safety Code, "[a]ny food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact." Cal. Health & Saf. Code § 110740.

88. All of the Products violate the California Health and Safety Code.

89. Under New Jersey state law similarly, a food or beverage product is misbranded and unlawful to sell "If it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless it bears labeling stating that fact[.]" NJ Rev Stat § 24:5-17 (2022)

CLASS ACTION COMPLAINT

90.    The Products all contain an artificial flavoring and none bears labeling stating that fact. The Products are all misbranded under New Jersey state law.

91.    Other states' laws including New Jersey further prohibit unlawful and misleading labeling; Defendant's intentional mislabeling and misbranding of the Products with respect to the Products' undisclosed artificial flavoring is inherently misleading and violates state law.

92.    Because it contains an artificial flavor, federal regulations and state laws including specifically the laws of California and New Jersey require the Products to display both front- and back-label disclosures to inform consumers that they are artificially flavored.

93.    The Products have none of the required disclosures but instead falsely claim to be flavored only with "other natural flavors."

94.    The Products violate federal FDA regulations and state consumer protection laws.

95.    Defendant knowingly chose to label the Products unlawfully, deceiving and damaging consumers thereby.

96.    The Products are all misbranded and illegal to distribute or sell in commerce in California, New Jersey, or anywhere in the U.S.

### **3. The Product labels affirmatively conceal that the Products are artificially flavored**

97.    All of the Products contain the undisclosed artificial flavor dl-malic acid.

98.    Because the Products contain either no fruit juice at all or only minuscule amounts, Defendant adds artificial dl-malic acid to the Products to simulate, resemble, and reinforce a tart fruit taste that consumers expect from the fruits and berries advertised on the Product labels.

99.    FDA regulations set forth a <u>mandatory</u> labeling system which requires food and beverage manufacturers to choose one of three allowable label claims regarding natural and artificial flavors.

CLASS ACTION COMPLAINT

100. Pursuant to federal and state law, a food or beverage may *only* be labeled "Naturally Flavored," "Artificially flavored," or "Naturally and Artificially Flavored."

101. Unmodified label claims to be "naturally flavored," "natural flavors," or "other natural flavors" are <u>prohibited</u> if the product contains artificial flavors.

102. A manufacturer choosing to label a food product as "naturally flavored" or "other natural flavors" when that product contains artificial flavor is intentionally and affirmatively choosing to conceal from consumers that the product is artificially flavored.

103. None of the Products' labels display the federal- and state-required "Artificial Flavor" label statement but instead affirmatively describe the Product as instead containing natural flavors.

104. None of the Products include on either the front or back label any indication that any of the Products contains artificial flavoring.

105. These Product labels warrant to consumers that the Products are exclusively flavored only with natural fruits and berries and natural fruit and berry flavors.

106. Representative front label images are shown below for the V8 Splash "Strawberry Kiwi" and "Fruit Medley" products.

 

12

107. All of the Product labels, like that of the "Berry Blend" product, purposefully omit the legally-required disclosures that the Products contain artificial flavor and instead affirmatively misbrand the Products as containing only "other natural flavors" when they in fact contain artificial flavor.

108. The ingredient list for "V8 Splash Strawberry Kiwi" shows that the Product consists of "Water, high fructose corn syrup, vegetable juice (water and concentrated juice of carrots), malic acid, natural flavoring, vitamin C (ascorbic acid), Sucralose, Red 40, niacinamide (vitamin B), pyridoxine hydrochloride (vitamin B6), cyanocobalamin (vitamin B12)."[6] (Emphasis added.)

109. These are the ingredients listed on Product labels and on Defendant's webpage for this Product in 2022. At some time since then Defendant apparently began adding token amounts of kiwi and strawberry juice to the Product.

110. The "malic acid" in these Products is similarly dl-malic acid, a synthetic petrochemical made from benzene or butane. "Sucralose" is an artificial sweetener and "Red 40" is synthetic food dye.

111. The "Strawberry Kiwi" product contains insufficient fruit or berry juice to create either the taste or appearance of strawberry or kiwi, but instead contains artificial flavor, artificial sweetener, and artificial food dye to make the product look and taste as if it were fruit juice, which it is not.

112. Even V8 Splash Product varieties that contain some fruit juice contain only token amounts – less than 1% of any of the named fruit juices.

113. These products contain barely more fruit juice than chemical Red Dye #40.

114. Under federal regulations and state law, the Product back-label ingredient lists are also required to disclose the presence of artificial flavorings.

115. Federal regulations and state consumer protection laws require all food products that contain artificial flavor to disclose this fact to consumers prominently on

---

[6]https://web.archive.org/web/20220120135307/https://www.campbellsfoodservice.com/product/juice-drink-strawberry-kiwi-2, January 20, 2022.

CLASS ACTION COMPLAINT

both the front and back labels.

116.   None of the Products' labels anywhere include the required artificial-flavor disclosures.

117.   None of the Product labeling or ingredient lists inform the consumer, as required by law, that the Products contain artificial flavor.

118.   A food or beverage product may not be labeled "Naturally flavored" or "other natural flavors" if it contains <u>any</u> artificial flavoring that simulates, resembles, or reinforces the labeled characterizing flavor.

119.   The Products' affirmative label claims are <u>prohibited</u> label declarations for these Products:  they violate federal and state law and falsely warrantee that the Products contain no artificial flavor.

120.   These Product label statements "Berry flavored," "Strawberry and Kiwi flavored," or "other natural flavors" are all illegal label claims in the absence of an accompanying artificial flavor disclosure. The Products are required by federal and state law to state prominently on the front labels, "Artificially flavored."

121.   Under the uniform mandatory national federal food-product labeling system, the Products' labels are affirmative statements constituting express warranties that the Products contain only natural flavors and contain no artificial flavors.

122.   Reasonable consumers are by now accustomed to and rely on the uniform, nation-wide requirements that every food or beverage that contains artificial flavors states this fact prominently on the product's front label.

123.   American consumers may not be prepared to recite FDA regulations but are well-familiar by this time with the uniform nationwide food and beverage labeling practices that reflect those decades-old national requirements:  if a food or beverage product contains artificial flavoring it will always state prominently on the front label that the product contains "Artificial Flavor" or is "Artificially Flavored."

124.   Consumers therefore reasonably conclude from the Product packaging, consistent with decades of experience purchasing food products that comply with the

uniform nationwide legal requirements, that the Products contain only natural juices and flavorings.

125.   Defendant deceptively fails to disclose the presence of artificial flavoring in the Products, and affirmatively misrepresents the Products as solely naturally flavored, unlawfully misleading consumers to believe that the Products are naturally-flavored fruit juice products when in fact they are artificially flavored and either contain no fruit juice or only token amounts.

126.   Because Defendant failed to label the Products lawfully, and instead affirmatively and misleadingly labeled the Products as if they were solely naturally flavored, Plaintiffs were unaware that the Products contained artificial flavors when they purchased them.

127.   When purchasing the Products, Plaintiffs were seeking products of particular qualities, specifically products that were flavored only with the natural ingredients claimed on the labels and that did not contain artificial flavors.

128.   Plaintiffs are reasonable, ordinary consumers. Consumer surveys consistently show that the overwhelming majority of consumers will pay more for foods perceived as natural, specifically including foods with no artificial flavors.

129.   Plaintiffs and the Class lost money as a result of Defendant's conduct because they purchased products that contained undisclosed and undesirable artificial flavors.

130.   Defendant's marketing of the Products reflects this knowledge of consumers' preferences for natural products. Defendant intentionally conceals from consumers that the Products are artificially flavored.

### **4. The Products also violate federal and state food-ingredient "presence or absence" laws**

131.   The Products also violate 21 C.F.R. 102.5(c) and the corresponding state laws, including specifically California law which incorporates FDA regulations by reference and New Jersey law which prohibits misleading food labeling.

132.   A food product's label must also include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance . . .  and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. 102.5(c).

133.   Such a statement must be in boldface print on the front display panel and of sufficient size for an average consumer to notice.

134.   The "presence or absence" of <u>any</u> actual fruit juice in products marketed as fruit-juice-based beverages has a material bearing on price and consumer acceptance.

135.   Under the federal regulations and state laws incorporating or reflecting those standards, Defendant must also inform consumers that the Products contain no fruit or berry juice, or only minuscule amounts of such juices, in addition to the mandatory artificial-flavor label statements.

136.   The Products' labels do not include any of the required label statements.

137.   U.S. Food, Drug, and Cosmetic Act regulations also require that a food's label accurately describe the food product and all ingredients. *See*, 21 C.F.R. 102.5(a).

138.   The Products' labels therefore also violate 21 C.F.R. 102.5(a) and  (c), and the similar laws of other states.

139.   California law prohibits any entity from making untrue or misleading statements about goods, engaging in unethical practices injurious to California residents or competing corporations and other entities, and from violating FDA and other federal regulations and the laws of other states regarding consumer protections.

140.   New Jersey law protects consumers by prohibiting deceptive sales practices to include affirmative misrepresentations, concealment or omission of material facts, false promises or pretenses, and unconscionable commercial practices in consumer transactions.  New Jersey law also makes unlawful the breach of warranties made by product manufacturers.

141.   Other states' laws similarly require that food product labels must disclose

CLASS ACTION COMPLAINT

the presence of artificial flavoring and be accurate and complete and not misleading.

142.    Defendant was required to place prominently on the Products' front labels a notice sufficient to allow consumers to understand that the Products contain artificial flavorings and that they contain either no fruit juice whatsoever or only token amounts.

143.    Defendant failed to disclose in their labels not only that the Products contain artificial flavoring but also that some of the Products contain no fruit juice whatsoever and no Product contains any more than a token amount.

144.    FDA regulations further require that a food or beverage product label inform the consumer when any ingredient promised by the name or labeling of the product is absent.

145.    The federal guidance gives as an example that a product labeled "Strawberry Shortcake" that includes no actual strawberries must inform consumers on the label that the product "Contains no strawberries."

146.    Those Products that contain no actual fruit juice or only de minimis amounts but are named for and show pictures on the labels of multiple fruits or berries must inform the consumer they contain no actual fruits or berries or juice thereof.

147.    "V8 Splash Berry Blend" contains no berries or the juice of any berries.

148.    The Products that contain no actual fruit juice are required to further inform the consumer that they "contain 0% berry juice" or "contain 0% fruit juice" or "contain less than 1% kiwi juice".

149.    Defendant is a sophisticated manufacturer, marketer, and distributor of foods and beverages and is well aware of federal and state food labeling laws and regulations.

150.    Defendant chose not to comply with federal and state labeling laws.

151.    Defendant knew or should have known that the Products are mislabeled and misbranded.

152.    Defendant willfully and affirmatively conceals from consumers the fact that the Products are artificially flavored and contain little or no actual fruit juice.

**5. The Products also violate federal and state food-fortification policy and**

17

**laws**

153.   The Products further violate federal and state food-fortification labeling policy and are misleadingly advertised as a source of antioxidant vitamins.

154.   US FDA fortification policy states that random addition of vitamins to food and beverage products is improper.[7]

155.   Such addition, and in particular the advertising or labeling of such nutrient additions, is inherently misleading as it creates the impression that the advertised junk food is a healthy choice.

156.   That is exactly the consumer misimpression that Defendant attempts to create here.

157.   The Product labels announce on the front of the packages in boldest font that they contain "ANTIOXIDANT VITAMINS".

158.   Real fruit and fruit juice would indeed contain significant amounts of such vitamins as well as other essential nutrients important for the metabolism of those vitamins.

159.   Instead of the significant amounts of naturally-occurring vitamins and minerals that would accompany real fruit and fruit juice, a minimal amount of a few synthetic vitamins are "sprinkled in" to the Products in manufacturing. The Products do not contain anything approaching the normal amount of naturally-occurring vitamins, minerals, antioxidants, enzymes, or fiber that would be expected if they actually contained anything other than negligible amounts of real fruit juice.

160.   The Products instead contain large amounts of added sugar as well as artificial sweetener; the added sugar, in fact, *robs* the body of such essential nutrients.

161.   Excess sugar consumption depletes vitamins and minerals, including those necessary for beneficial antioxidant health effects. Excess sugar consumption prevents

---

[7] "Nutritional Quality of Foods; Addition of Nutrients" in the Federal Register (45 FR 6314), *and see* Code of Federal Regulations (21 CFR 104.20). "The fortification policy discourages indiscriminate addition of nutrients to foods."

CLASS ACTION COMPLAINT

antioxidant vitamins and minerals from working effectively in the body.

162. Excess sugar consumption interferes with the body's metabolism of vitamins including vitamin C.

163. Excess sugar consumption also depletes and blocks the absorption of vitamin D, calcium, magnesium, potassium, and chromium.

164. Excess sugar consumption depletes thiamine, riboflavin, niacin, and cellular phosphate necessary for energy metabolism.

165. Far from being a good source of antioxidants or antioxidant vitamins, the Products contribute to the depletion of all these nutrients from the human body.

166. Defendants misleadingly label the Products as if they contain healthful fruit juices and supply healthful vitamins, when in fact they consist largely of sugar-water, the excess consumption of which interferes with the proper metabolism of those vitamins.

167. Even apart from the fortification policy that the Products violate, it is misleading to consumers to trumpet the Products as sources of "ANTIOXIDANT [] VITAMINS."

168. Rather than being a source of antioxidants, the added refined sugar in the Products depletes the body of antioxidants and blocks vitamin and mineral absorption and cellular benefits.

169. California, New Jersey, and similar state laws prohibit labeling that is inherently misleading.

170. The Products violate federal FDA and state food fortification and labeling policy as well.

## 6. Defendant has known since at least 2014 that the Products' labeling was deceptive

171. In 2014, the Center for Science in the Public Interest (CSPI) wrote and published a letter to Defendant informing Defendant that these Product labels were inherently deceptive to consumers.

172. The CSPI informed Defendant in 2014 that,

CLASS ACTION COMPLAINT

"The pictures of fruits and vegetables [on the product packages] in conjunction with bold antioxidant vitamin claims on V8 packaging, websites, Facebook pages, and other advertising serve to confuse consumers as to which product lines contain juice and which products are primarily sugar water. Campbell misleads consumers by creating the erroneous impression that the vitamins contained in its Products are sourced from the fruits and vegetables depicted on its labels and that all of its Products are wholesome, healthful alternatives to consuming fresh fruits and vegetables."[8]

173.    The CSPI further informed Defendant that "It is also misleading to overstate the highlighted nutrients benefits while omitting the amounts of sugar and other potentially harmful ingredients that comprise the rest of the beverage."[9][10]

174.    Defendant further misleads consumers by taking advantage of consumers' association of the "V8" brand with healthful fruit and vegetable beverages.

175.    V8 Vegetable Juice, or simply "V8," is the registered trademark name for the well-known vegetable-juice beverage made from eight actual vegetable juices.

176.    "V8" is an established and trusted brand name, a trademark registered with the US Patent and Trademark Office <u>and understood by consumers</u> to represent a natural beverage made from eight actual vegetable juices.

177.    Defendant labels and advertises its "V8 Splash" Products as part of this same brand image that promises wholesome natural beverages, health, well-being, and transparency, promising, "food you can feel good about eating—made with ingredients you can trust."[11]

178.    With respect to every one of the Products this is a false promise.

---

[8] CSPI letter, 2014; https://www.cspinet.org/sites/default/files/attachment/v8demand1.pdf; last visited January 21, 2024.
[9] Id.
[10] Because Defendant concealed this fact from purchasers, the CSPI was not aware at the time that the Products were also artificially flavored.

[11] https://www.campbellsoupcompany.com/our-impact; last visited September 12, 2023.

179.   Defendant misleads consumers and takes advantage of the reputation, image, and consumer acceptance of its V8 juice products to sell consumers the artificially-flavored, artificially sweetened, highly-sugared junk beverages that are the Products.

180.   Highly-sweetened beverages are unhealthy for children.

181.   Sugar-sweetened beverages contribute to childhood obesity, diabetes, and metabolic syndrome, among other health problems.

182.   At times during the Class period, V8 Splash Products contained as much sugar as Grape Kool Aid.

183.   Artificial sweeteners are also not healthy for young children.

184.   Artificial sweeteners permanently alter children's taste preferences for ultra-sweet foods, setting the stage for a lifetime of unhealthy food and beverage choices.

185.   Highly-sweetened beverages – both sugar-sweetened and artificially-sweetened – strongly influence a child's taste preferences, leading them to prefer and seek out only other highly-sweetened foods, often to the exclusion of all other nutritious food and often at a very young age.

186.   The Products contain large amounts of added sweeteners in the form of <u>both</u> high-fructose corn syrup and artificial sweeteners.

187.   Defendant takes advantage of consumer trust in the V8 reputation and trademark by labeling and selling artificially-sweetened, artificially flavored sugar-water packaged as if it were healthy fruit juice.

188.    Defendant intentionally markets the Products to parents as a healthy juice drink for children.

189.   Defendant misleads consumers into thinking they are buying a healthful blend of fruit and vegetable juices instead of artificially-flavored sugar-water.

190.   The Products trick parents into believing they are purchasing and serving fruit-juice-based beverages to their families, beverages that provide at least some of the health benefits of fruit juice.

CLASS ACTION COMPLAINT

191.   Defendant's labeling and marketing of the Products is inherently misleading and violates state consumer protection laws.

**7. Defendant's competitors label their products lawfully**

192.   Defendant not only deceives and harms consumers but also gains an unfair commercial advantage in the marketplace by labeling the Products deceptively.

193.   Other manufacturers of competing beverage products label their products lawfully.

194.   Other competing manufacturers, offering products whose labels suggest as Defendant does that such products are naturally flavored, truly make their products only with natural ingredients.

195.   Other manufacturers of artificially flavored beverage products accurately and lawfully label their products as "Artificially Flavored" and clearly disclose the presence of artificial flavoring to consumers.

196.   The front labels on competing artificially-flavored fruit-flavored juice drinks lawfully disclose the presence of artificial flavors.

197.   Those competing, lawfully-labeled products are priced lower because consumers will not pay as much for artificially-flavored drinks.

198.   Unlike its competitors, Defendant conceals the use of artificial flavoring, thus deceiving consumers, illegally cutting costs and increasing profits, and competing unfairly and unlawfully in the marketplace against beverage companies whose labels and marketing comply with federal regulations and state law.

199.   Defendant's conduct injures competing manufacturers that do not engage in the same illegal behavior. Those manufacturers compete for market share and limited shelf space, as well as for consumers' buying preferences and dollars. Defendant's competitors do so lawfully.  Defendant does not.

**8. Plaintiffs and the Class pay a price premium for Defendant's misbranded Products**

CLASS ACTION COMPLAINT

200.   Plaintiffs purchased the Products in California during the Class Period as defined herein.

201.   Plaintiff Monic Serrano purchased the Products two to three times per month from about 2020 until the present, at Ralphs, Food 4 Less, CVS, and Smart and Final stores located in or near North Hollywood, California.

202.   Plaintiff Debra Shaw purchased the Products one to two times per month beginning in about 2018, at various locations in California, most recently at a Walmart warehouse store located at 3750 S. Mooney Boulevard, Visalia, CA 93277.

203.   Plaintiffs purchased the Products at the marked retail prices, typically at average unit prices ranging from $3.00 to $5.00, and from time to time at other promotional prices.

204.   Plaintiffs first discovered Defendant's unlawful conduct in October 2023 when they learned that the Products contained undisclosed artificial flavoring.

205.   Plaintiffs saw, were deceived by, and relied upon the Products' deceptive labeling, including Defendant's omission of the required artificial-flavor disclosures and affirmative false labeling.

206.   Plaintiffs purchased the Products believing they were exclusively naturally flavored, based on the Products' deceptive labeling and failure to disclose the artificially flavoring.

207.   Plaintiffs, and the Class, as reasonable consumers, are not required to subject consumer food products to laboratory analysis, to scrutinize the back of the label to discover that Product front labels are false and misleading, or conduct further research to find information that state law and federal regulations require be displayed prominently on the front labels of these Products.

208.   Defendant, but not Plaintiffs, knew or should have known that the Products' labeling was false or misleading and violated federal regulations and state laws.

209.   Because Plaintiffs reasonably assumed the Products to be free of artificial flavoring based on the Products' labels when they were not, they did not receive the full

benefit of their purchases. Instead of receiving the benefit of products free of artificial flavoring, Plaintiffs received Products that were artificially flavored and unlawfully labeled to deceive consumers.

210.   Plaintiffs and the Class would not have purchased the Products in the absence of Defendant's affirmative misrepresentations and omissions. Had Defendant not violated state law and federal regulations, Plaintiffs and the Class would not have been injured.

211.   American consumers prefer natural food products and are willing to pay significantly more for such products when compared to food products with artificial ingredients.

212.   Products that consumers believe to be naturally flavored sell at a price premium compared to products that contain artificial flavors.

213.   Food products that are naturally flavored and contain only natural flavorings – or are labeled and marketed as if they were only naturally-flavored – therefore command a price premium.

214.   Plaintiffs and the Class members would not have paid as much for the Products absent Defendant's false and misleading affirmative statements and omissions.

215.   The Products were therefore worth less to Plaintiffs and other Class members than they paid for them.

216.   Defendant's unlawful and deceptive labeling practices and knowing and willful omissions caused Plaintiffs and the Class to lose money. Plaintiffs, and each Class member, altered their financial positions to their detriment and suffered losses equal to the price premium they paid believing the products contained no artificial flavors.

217.   Defendant sold the Products to retail intermediaries for the express purpose of further sale to consumers including Plaintiffs and the Class members.

218.   Plaintiffs and the Class members were intended beneficiaries of the contracts for the sale of the Products between Defendant and retail intermediaries.

219.   Because human memory is imperfect, Plaintiff and class members may

24

mistakenly purchase the Products again in the future, particularly as the packaging and labeling is intentionally deceptive, without realizing that those Products contain artificial flavoring and are still deceptively packaged and labeled.

220.    Plaintiff may also inadvertently purchase the Products in the future despite the fact that the Products contain undisclosed artificial flavor and are falsely labeled and advertised, as she may reasonably but incorrectly assume the unlawful practice of adding undisclosed artificial flavoring ceased.

221.    Plaintiffs intend to, desire to, and will purchase the Products again when they can do so with the assurance that the Products' labels, which warrant that the Products are solely naturally flavored, are lawful and consistent with the Products' ingredients.

## V.    **DELAYED DISCOVERY**

222.    Plaintiffs did not discover that Defendant's labeling of the Products was false and misleading until November 2023 when they learned the Products contained undisclosed artificial flavoring.

223.    Plaintiffs are reasonably diligent consumers who exercised reasonable diligence in their purchases and consumption of the Products. Nevertheless, they would not have been able to discover Defendant's deceptive practices and lacked the means to discover them given that, like nearly all consumers, they rely on and are entitled to rely on the manufacturer's obligation to label its products in compliance with federal regulations and state law. Furthermore, Defendant's labeling practices and non-disclosures—in particular, misnaming and failing to correctly identify the artificial flavors in the ingredient list, or to disclose that the Products contained artificial flavoring, or to accurately identify the kind of malic acid that Defendant puts in the Products, and Defendant's affirmative false labeling statements impeded Plaintiffs' and the Class members' abilities to discover the deceptive and unlawful labeling of the Products throughout the Class Period.

224.    Because Defendant actively concealed the illegal conduct, preventing Plaintiffs and the Class from discovering the violations of state and federal law, Plaintiffs and the Class are entitled to delayed discovery and an extended Class Period tolling the applicable statute of limitations.

## VI.    CLASS ACTION ALLEGATIONS

225.    Plaintiffs bring this action on behalf of themselves and all others similarly situated (the "Class") pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

226.    The Class is defined as follows:

> All U.S. residents who purchased the Products in the United States on or after January 1, 2016 and until the date the Class is certified by the Court, excluding Defendant and Defendant's officers, directors, employees, agents, and affiliates, and the Court and its staff.

227.    Plaintiffs also propose to represent a California Sub-Class, defined as follows:

> All California residents who purchased the Products in California on or after January 1, 2018 and until the date the Sub-Class is certified by the Court, excluding Defendant and Defendant's officers, directors, employees, agents, and affiliates, and the Court and its staff.

228.    Plaintiffs also propose to represent a multi-state express- and implied-warranty class.

229.    The proposed multi-state express- and implied-warranty class is defined, per prior California federal district court authority, as:

> All residents of California, Delaware, District of Columbia, Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, or West Virginia, who purchased one or more of the Products as defined herein in one of those states on or after January 01, 2018, and until the date the Class is certified by the Court, excluding Defendant and Defendant's officers, directors, employees, agents, and affiliates, and the Court and its staff.

26

CLASS ACTION COMPLAINT

230.   Plaintiffs also propose to represent a multi-state breach of contract, breach of good faith, and fraudulent inducement class.

231.   The multi-state breach of contract, breach of good faith, and fraudulent inducement class is defined consistent with California federal court authority, as:

> All residents of California, Alabama, Alaska, Colorado, Connecticut, Florida, Illinois, Indiana, Iowa, Kansas, Louisiana, Massachusetts, Missouri, New Jersey, New York, North Dakota, Oregon, Texas, Utah, or West Virginia, who purchased one or more of the Products as defined herein in one of those states on or after January 01, 2018, and until the date the Class is certified by the Court, excluding Defendant and Defendant's officers, directors, employees, agents, and affiliates, and the Court and its staff.

232.   During the Class Period, the Products unlawfully contained an undisclosed artificial flavor and were otherwise improperly and unlawfully labeled.

233.   During the Class Period, Class members purchased one or more of the Products and incurred the same injuries as alleged herein for the Plaintiffs.

234.   The proposed Class meets all criteria for a class action, including numerosity, typicality, superiority, and adequacy of representation; there is a well-defined community of interest in questions of law and fact common to the Class.

235.   The proposed Class satisfies numerosity. Defendant distributes the products through numerous mass-market retailers nationwide; the Class numbers at least in the tens of thousands of consumers. Individual joinder of the Class members in this action is impractical. Addressing the Class members' claims through this class action will benefit Class members, the parties, and the courts.

236.   The proposed Class satisfies typicality. Plaintiffs' claims are typical of and are not antagonistic to the claims of other Class members. Plaintiffs and the Class members all purchased the Products, were deceived by the false and deceptive labeling, and lost money as a result.

CLASS ACTION COMPLAINT

237. Further both Plaintiffs and every class member were exposed to the fraudulent labeling because the front labels themselves were deceptive and every purchaser saw the Product labels at the point of purchase.

238. Further, because New Jersey law includes a presumption of extra-territoriality, and under that presumption where products or conduct emanating from New Jersey violate New Jersey consumer protection law, that law may be applied uniformly to purchases in the U.S. outside New Jersey. The same state law may therefore be applied to all purchases by members of the proposed nationwide class.

239. The proposed Class satisfies superiority. A class action is superior to any other means for adjudication of the Class members' claims because each Class member's claim is modest, based on the Products' retail purchase price which is generally under $5.00 per unit. It would be impractical for individual Class members to bring individual lawsuits to vindicate their claims. If this action is not brought as a class action, Defendant can continue to deceive consumers, unfairly compete with other companies, and violate federal and state law with impunity.

240. Because Defendant made misrepresentations on the label of the Products themselves, all Class members including Plaintiffs were exposed to and continue to be exposed to the omissions and affirmative misrepresentations.

241. The proposed Class representatives satisfy adequacy of representation. The Plaintiffs are adequate representatives of the Class as they seek relief for the Class, their interests do not conflict with the interests of the Class members, and they have no interests incompatible with those of other Class members. Plaintiffs have retained counsel competent in the prosecution of consumer fraud and class action litigation.

242. There is a well-defined community of interest in questions of law and fact common to the Class, and these predominate over any individual questions affecting individual Class members in this action.

243. Questions of law and fact common to Plaintiffs and the Class include:

CLASS ACTION COMPLAINT

a.    Whether Defendant adds artificial dl-malic acid to the products;

b.    Whether the malic acid in the Products acts as a flavoring;

c.    Whether Defendant unlawfully failed to disclose the presence of artificial flavoring in the Products;

d.    Whether Defendant knowingly and purposefully failed to disclose the presence of artificial flavoring in the Products;

e.    Whether Defendant violated U.S. Food and Drug Administration labeling regulations and corresponding state laws;

f.    Whether Defendant's labeling omissions and affirmative false representations constituted false advertising under state law;

g.    Whether Defendant's conduct constituted violations of California's Consumers Legal Remedies Act, Cal. Civ. Code §§1750 *et seq.*

h.    Whether Defendant's conduct constituted violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq.*

i.    Whether Defendant's conduct constituted violations of California's False Advertising law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*

j.    Whether Defendant's conduct constituted violations of New Jersey Consumer Fraud Act ("CFA"), *N.J.S.A. 56:8-1, et seq*;

k.    Whether Defendant's conduct constituted a violation of other states' consumer protection statutes;

l.    Whether Defendant's conduct constituted a violation of state common-law consumer protection and unfair competition statutes;

m.    Whether Defendant's advertising and label statements describing natural fruit and berry flavors were an affirmative representation of the Products' composition creating an express warranty;

29

n.     Whether Defendant's conduct constitutes a breach of implied warranties under state statutes and common law;

o.     Whether Defendant's conduct constitutes negligent misrepresentation;

p.     Whether Defendant's conduct constitutes fraud by omission;

q.     Whether Defendant's conduct constitutes fraudulent inducement.

r.     Whether the statute of limitations should be tolled on behalf of the Class due to Defendant's deceptive conduct in intentionally concealing the presence of artificial flavoring ingredients in the Products;

s.     Whether Plaintiffs and the Class are entitled to restitution or rescission, actual damages, punitive damages, attorneys' fees and costs of suit, and injunctive relief; and

t.     Whether Plaintiffs and the Class are entitled to any such further relief as the Court deems appropriate.

244.   Class members lost money as a result of Defendant's unlawful behavior.

245.   Class members altered their financial positions to their detriment and suffered individual loss in an amount equal to the price or the price premium they paid for the Products as falsely labeled and advertised.

246.   The New Jersey Consumer Fraud Act, NJSA 56:8-1, et seq, under which *inter alia* Plaintiffs and the proposed Class allege many of the above-described violations and causes of action, as interpreted by the New Jersey Supreme Court includes a presumption of extraterritoriality for any harms arising from violative conduct occurring in or emanating from the state of New Jersey.

247.   Further, Defendant has acted on grounds applicable to the entire Class, making final injunctive relief or declaratory relief appropriate for the Class as a whole.

248.   Class treatment is therefore appropriate for this Action.

CLASS ACTION COMPLAINT

## VII.    CAUSES OF ACTION

**FIRST CAUSE OF ACTION:  Violation of the Consumers Legal Remedies Act**

Cal. Civ. Code §§ 1750, *et seq*. (on behalf of the California Sub-Class)

249.    Plaintiffs reallege and incorporate by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

250.    The Consumers Legal Remedies Act (CLRA) prohibits any unfair, deceptive and unlawful practices, and unconscionable commercial practices in connection with the sale of any goods or services to consumers.

251.    Plaintiffs and the California Sub-Class are "consumers" as defined by Cal. Civ. Code §1761(d).

252.    The Products are "goods" as defined by Cal. Civ. Code §1761.

253.    Defendant's failure to label the Products in accord with federal and state labeling regulations, omitting the required information that the Products contain artificial flavoring, was an unfair, deceptive, unlawful and unconscionable commercial practice.

254.    Defendant's conduct violates the Consumer Legal Remedies Act.

255.    As a result of Defendant's violations, Plaintiffs and the Class suffered ascertainable losses in the form of the price premiums they paid for the unlawfully labeled and marketed Products, which they would not have paid had Defendant labeled the Products in accordance with federal regulations and California law, and in the form of the reduced value of the Products purchased compared to the Products as labeled, advertised, and warranted.

256.    On or about February 12, 2024, Plaintiffs sent a notice letter to Campbell which complies with California Civil Code § 1782 (a). Plaintiffs sent Defendant, individually and on behalf of the proposed Class, a letter via Certified Mail, demanding that Defendant rectify the violations described above by agreeing to be bound by their legal obligations, providing monetary relief, and giving notice to all affected customers of their intent to do so.

257.    If Defendant does not comply with the notice letter within thirty (30) days,

31

Plaintiffs will amend this complaint accordingly. Until such time, this Complaint seeks only injunctive relief and not damages under § 1770 and § 1782.

**SECOND CAUSE OF ACTION**: **Violation of the Unfair Competition Law**

Cal. Bus. & Prof. Code §§ 17200, *et seq.* (on behalf of the California Sub-Class)

Unfair Competition Law, Unlawful Prong

258.   Plaintiffs reallege and incorporate by reference each and every allegation contained elsewhere in this Complaint, as if fully set forth herein.

259.   The Unfair Competition Law (UCL) prohibits any "unlawful," "unfair" or "fraudulent" business practice. Section 17200 specifically prohibits any "unlawful . . . business act or practice."

260.   The UCL recognizes violations of other federal and state laws and statutes and considers those violations also to constitute violations of California law when the violations occur in California.

261.   Defendant's practices as described herein were at all times during the Class Period and continue to be unlawful under, *inter alia*, FDA regulations and California's Sherman Law.

262.   Among other violations, Defendant's conduct in unlawfully distributing the Products in commerce in California violated U.S. FDA packaging and labeling regulations.

263.   The Products' front labels fail to disclose that the Products contain synthetic artificial flavoring in violation of 21 CFR § 101.22 and California's Sherman Law and are therefore misbranded.

264.   The Products contain dl-malic acid.

265.   The dl-malic acid is an artificial flavoring material, and is included in the Products to create, simulate, and reinforce the Products' characterizing fruit and berry flavors.

266.   The dl-malic acid in the Products is not derived from any natural material as defined in 21 CFR § 101.22 and is therefore by law an artificial flavor.

267. Defendant failed to inform consumers of the presence of the artificial flavor in the Products, on either the front or back-label as required by law, and distributed the Products in interstate commerce and in California.

268. Defendant's practices are therefore unlawful as defined in Section 17200, *et seq*., of the California Civil Code.

269. Pursuant to California Business & Professions Code §17203, Plaintiffs seek an order requiring Defendant to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendant to return the full amount of money improperly collected to all those who purchased the Products.

<u>Unfair Competition Law, Unfair Prong</u>

270. Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unfair . . . business act or practice." Defendant's practices violate the Unfair Competition Law "unfair" prong as well as the "unlawful" prong.

271. Defendant's practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because the conduct is unethical and injurious to California residents and the utility of the conduct to Defendant does not outweigh the gravity of the harm to consumers.

272. Defendant's sale and distribution of misbranded Products in violation of federal and state law may have some utility to Defendant in that it allowed Defendant to sell the Products to consumers who otherwise would not purchase an artificially flavored food or beverage product at the retail price or at all if it were labeled correctly, and to realize higher profits than if the Products were formulated or labeled lawfully. But this utility is small and is far outweighed by the gravity of the harm Defendant inflicted upon California consumers.

273. Defendant's conduct also injures competing food product manufacturers, distributors, and sellers, who do not engage in the same unlawful, unfair, and unethical behavior.

CLASS ACTION COMPLAINT

274.   Moreover, Defendant's practices violate public policy expressed by specific constitutional, statutory, or regulatory provisions, including the Sherman Law, the False Advertising Law, and the FDA regulations cited herein.

275.   Plaintiffs' and the California Subclass purchases of the Products took place in California.

276.   Defendant labels the Products in violation of federal regulations and California law requiring truth in labeling.

277.   Defendant consciously failed to disclose material facts to Plaintiffs and the California Sub-Class in Defendant's advertising and marketing of the Products.

278.   Defendant's conduct is unconscionable because in addition to the breach of consumer trust, Defendant willfully violated 21 C.F.R. § 101.22(c), which requires all foods containing artificial flavoring to include a "statement of artificial flavoring . . . likely to be read by the ordinary person under customary conditions of purchase and use of such food."

279.   Defendant's conduct is "unconscionable" because it violates, *inter alia*, 21 C.F.R. § 101.22, which requires all food products distributed in commerce in the U.S. for which artificial flavoring provides a characterizing flavor to disclose this fact prominently on the product's front label, as well as California's Health and Safety Code.

280.   Defendant intended that Plaintiffs and the Sub-Class rely on Defendant's acts or omissions so that Plaintiffs and the other Sub-Class members would purchase the Products.

281.   Had Defendant disclosed all material information regarding the Products in their advertising and marketing, Plaintiffs and the Sub-Class would not have purchased the Products or would have paid less for the Products.

282.   Plaintiffs and the California Sub-Class suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising:  they were denied the benefit of the bargain when they purchased the Products based on Defendant's violation of the applicable laws and regulations, and purchased the Products rather than competitors'

products which are lawfully labeled, and are either less expensive or contain no artificial flavoring.

283. Plaintiffs and the Sub-Class suffered an ascertainable loss of money. Defendant's acts, omissions and practices detailed herein proximately caused Plaintiffs and other members of the Sub-Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to purchase the Products they otherwise would not have, and they are entitled to recover such damages, together with appropriate penalties, including restitution, damages, attorneys' fees and costs of suit.

284. Section 17200 also prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons set forth above, Defendant engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business & Professions Code § 17200.

285. Pursuant to California Business & Professions Code §17203, Plaintiffs seek an order requiring Defendant to immediately cease such acts of unlawful and unfair business practices and requiring Defendant to return the full amount of money improperly collected from Plaintiffs and the California Sub-Class.

### THIRD CAUSE OF ACTION:  Violations of False Advertising Law

Cal. Bus. & Prof. Code §§ 17500, *et seq.* (on behalf of the California Sub-class)

286. Plaintiffs reallege and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

287. Defendant distributed, in California and in interstate commerce, Products that unlawfully fail to disclose artificial flavoring on their packaging as required by federal food labeling regulations.

288. The Products' labeling and advertising in California falsely represent the Products as if they were solely naturally flavored.

289. Under California's False Advertising Law, Business and Professions Code §17500 *et seq*, it is unlawful "to make or disseminate or cause to be made or disseminated before the public in this state . . .  any statement, concerning that real or

35

personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. . . ." Cal. Bus. & Prof. Code §17500.

290. The labeling and advertising statements on the Products conceal the fact that the Products contain a synthetic artificial flavor and Defendant, at a minimum by the exercise of reasonable care, should have known that the labeling was false and misleading.

291. Defendant profited from the false advertising displayed on the Products' labels.

292. Defendant's conduct violates California's False Advertising Law.

293. Plaintiffs, the Class, and the California Sub-Class are therefore entitled to the return of money Defendant improperly collected from all those who were exposed to the above-described false advertising and who purchased the Products when they otherwise would not have or who paid a price premium for the falsely advertised Products.

**FOURTH CAUSE OF ACTION:  Violation of the New Jersey Consumer Fraud Act**

N.J.S.A. 56:8-1, *et seq*
(Nationwide Class)

294. Plaintiffs reallege and incorporate by reference the allegations found elsewhere in the Complaint as if set forth in full herein.

295. The Products violate the New Jersey Consumer Fraud Act (CFA).

296. The Products are "merchandise" as defined by the CFA because they are consumer goods.

297. Plaintiffs and Class members are "persons" as defined by the CFA.

298. Plaintiffs' and Class members' purchases of the Products were sales as defined in the CFA.

CLASS ACTION COMPLAINT

299. Defendant's unlawful conduct, as described herein, occurred in New Jersey and relates to the manufacture, packaging, labeling, advertisement, distribution, and sale of the Products.

300. Defendant manufactured, labeled, and distributed the Products to retail intermediaries with the intention and for the purpose of further sale of the Products to members of the putative Class.

301. Defendant labeled and advertised the Products to induce Plaintiffs and Class members to purchase the Products and to pay the premium prices consumers are willing to pay for beverages and foods that do not contain artificial flavoring agents.

302. Defendant's intentional affirmative mislabeling of the Products and failure to disclose the artificial flavoring in the Products is an unconscionable commercial practice because it deceives consumers and is unfair to manufacturers of similar products who label their products in accordance with federal regulations and state law.

303. Under New Jersey state law as well as federal regulations, Defendant had a duty to disclose to consumers the presence of an artificial flavoring agent in the Products.

304. The labeling and advertising statements on the Products deliberately omit and affirmatively conceal the fact that the Products contain a synthetic artificial flavor.

305. Defendant was aware that the Products contained the artificial version of malic acid and that this malic acid acted as a flavoring agent.

306. Defendant knew or should have known that the Product labeling was false and misleading.

307. Defendant knowingly omitted from the Products' labels the material fact that the Products contain artificial flavoring.

308. Defendant affirmatively misrepresented to Plaintiffs and to the putative Class that the Products were solely naturally flavored and did not contain artificial flavoring agents.

309. Defendant intended that Plaintiffs and Class members would rely on Defendant's knowing concealment and omission of the material fact that the Products

CLASS ACTION COMPLAINT

contain artificial flavoring when deciding to purchase the Products, comparing the Products to other similar products, and deciding what they were willing to pay.

310. But for Defendant's unlawful conduct, Plaintiffs and Class members would either have not purchased the Products or would only have purchased the Products at lower prices than they paid, consistent with other artificially-flavored imitation juice drink products.

311. Defendant's unlawful conduct induced Plaintiffs and members of the Class to purchase products they otherwise would not have purchased or to pay prices higher than they otherwise would be willing to pay for a beverage containing artificial flavoring.

312. Defendant's unlawful conduct directly caused quantifiable economic damage in the form of either the Products' purchase prices or the price premiums for the Products.

313. Under New Jersey law, every class member who purchased the Products anywhere in the U.S. suffered an injury-in-fact in New Jersey where Defendant, the company that manufactured and labeled the Products, is located and where the violative conduct occurred.

314. The New Jersey Consumer Fraud Act applies a six-year statute of limitations.

315. As a proximate result of Defendant's violations of New Jersey law, Plaintiffs and Class members have been damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION: Breach of Express Warranties**

Cal. Comm. Code § 2313 & similar state laws

(California sub-class & multi-state sub-class, all states with substantially similar laws)

316. Plaintiffs reallege and incorporate by reference the allegations found elsewhere in the Complaint as if set forth in full herein.

317. The Products' front labels misleadingly claim, by operation of California law and similar laws of other states, that the Products are flavored only with the listed characterizing flavors.

318. These labels warrant, under federal law that the Products are flavored only with natural juices and natural flavors.

319. The Products' front labels fail to disclose the use of artificial flavoring "immediately and conspicuously preced[ing] or follow[ing]" the names of the characterizing flavors, as required by law. *See, e.g.,* 21 C.F.R. 101.22(i)(3).

320. The Products front labels further display prohibited affirmative label claims that the Products are [fruit] flavored and include only "other natural flavors" rather than artificial flavors.

321. Defendant's failure to disclose the use of artificial flavoring on the Products' front labels, and affirmative prohibited label claims, by operation of law inform consumers that the Products do not contain artificial flavors.

322. The Products' front labels falsely warrant by operation of law that the Products are flavored only with the listed or depicted fruits and berries and natural flavors.

323. Defendant's affirmations of fact, promises, and warranties that the Products contained only natural flavors became part of the basis of the bargain between the parties and thus constituted express warranties.

324. The Products did not conform to Defendant's affirmations of fact, promises, and warranties because they contain artificial flavors.

325. As a result, Plaintiffs, the California Sub-Class, and other U.S. consumers did not receive goods as warranted by Defendant.

326. Defendant breached their express warranties that the Products contained only natural flavors.

327. Defendant sold the Products under contracts to retail intermediaries who sold the Products to Plaintiffs and the Class members.

328. Defendant sold the Products to retail intermediaries for the express purpose of further sale to consumers including Plaintiffs and the Class members.

329. Plaintiffs and the Class members are intended beneficiaries of the contracts

39

for the sale of the Products between Defendant and retail intermediaries.

330.   Within a reasonable amount of time after Plaintiffs discovered that the Products contained synthetic flavoring ingredients, Plaintiffs notified Defendant of breach of warranties.

331.   As a proximate result of this breach of express warranties, Defendant damaged Plaintiffs, the California Sub-Class, and other consumers in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION:  Breach of Implied Warranties

Cal. Comm. Code § 2314 & similar state laws

(on behalf of the California Sub-Class and all states with substantially similar laws)

332.   Plaintiffs reallege and incorporate all of the allegations elsewhere in the complaint as if set forth in full herein.

333.   Defendant's label representations also create implied warranties that the Products are suitable for a particular purpose, specifically as naturally flavored beverage products containing no artificial flavors. Defendant breached this warranty as well.

334.   Because the Products do not display an "artificially flavored" disclosure as required by law and describe the Products' flavoring as "other natural flavors," the Products' front labels misleadingly warrant that the Products are not flavored with artificial flavoring ingredients and are flavored solely with natural ingredients comprising the characterizing flavors.

335.   As alleged in detail above, at the time of purchase Defendant had reason to know that Plaintiffs as well as all members of the California Sub-Class and other U.S. consumers intended to use the Products as naturally-flavored products that did not contain artificial flavoring.

336.   This became part of the basis of the bargain between the parties.

337.   Based on that implied warranty, Defendant sold the goods to Plaintiffs and other Class members who bought the goods from Defendant.

338.   At the time of purchase, Defendant knew or had reason to know that

40

Plaintiffs, the California Sub-Class members, and other U.S. consumers were relying on Defendant's skill and judgment to select or furnish products that were suitable for this particular purpose, and Plaintiffs justifiably relied on Defendant's skill, judgment, and adherence to good faith and fair dealing practices.

339. The Products were not suitable for this purpose.

340. Plaintiffs, the California Sub-Class, and other U.S. consumers purchased the Products reasonably believing they had the qualities they sought, based on the deceptive advertising and labeling, but the Products were actually unsatisfactory for the reasons described herein.

341. In addition, Defendant breached the implied warranty of merchantability because the Products were not merchantable in California, or anywhere in the U.S., as they were not of the same quality as other products in the category generally acceptable in the trade.

342. The Products would not pass without objection in the trade when packaged with their existing labels because the Products were misbranded and illegal to sell in California. *See* Cal. Comm. Code 2314(2)(a).

343. Defendant breached the implied warranty of merchantability.

344. The Products also were not acceptable commercially and breached their implied warranty because they were not adequately packaged and labeled as required. Cal. Comm. Code 2314(2)(e).

345. The Products also were not acceptable commercially and breached their implied warranty because they did not conform to the promises or affirmations of fact made on the containers or labels, Cal. Comm. Code 2314(2)(f), and other grounds as set forth in Commercial Code section 2314(2).

346. By offering the Products for sale and distributing the Products in California, Defendant also warranted that the Products were not misbranded and were legal to sell in California.

347. Because the Products were misbranded in multiple regards and were

41

therefore illegal to sell or offer for sale in California, Defendant breached this warranty as well.

348.   As a result of this breach, Plaintiffs, the California Sub-Class and other U.S. consumers did not receive goods as impliedly warranted by Defendant.

349.   Defendant's conduct violated similar state warranty laws in states other than California.

350.   Within a reasonable amount of time after the Plaintiffs discovered that the Products contained synthetic ingredients, Plaintiffs notified Defendant of such breach.

351.   As a proximate result of Defendant's breach of warranty, Plaintiffs and other California and other states' consumers have been damaged in an amount to be determined at trial.

352.   As a result, Plaintiffs, the California Sub-Class, and other U.S. consumers are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

## **SEVENTH CAUSE OF ACTION:  Intentional Misrepresentation**

Cal Civ. Code §§ 1709-1710 and the common law of all states with similar laws

353.   Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

354.   Defendant represented to Plaintiffs and the Class directly on the Products' labels that the Products were flavored solely with natural flavors and contained no artificial flavors.

355.   Defendant had no reasonable basis for representing that the Products were free of artificial flavors.

356.   These representations were false. Defendant admits and Plaintiffs confirmed by analytical testing that the Products contain artificial dl-malic acid.

357.   Defendant knew that these representations were false. Defendant admits

42

that it uses artificial malic acid, not natural, and that the dl-malic acid is used to provide a tart flavor in its products.[12]

358.    Defendant represented that the Products were free of artificial flavors although Defendant knew that the Products contain artificial dl-malic acid and that this artificial compound functions as a flavoring.

359.    Defendant willfully deceived Plaintiffs and the Class by failing to disclose the fact that the Products were flavored by an artificial flavoring agent and intended that this deceit would influence consumer purchasing decisions to the detriment of those purchasing the Products.

360.    Defendant concealed the fact the Products contained an artificial flavor from Plaintiffs and the putative Class even though Defendant knew that the presence or absence of artificial flavoring is important to American consumers.

361.    As a sophisticated manufacturer of foods and beverages, Defendant knew that whether a beverage contains artificial flavoring is a material fact to American consumers that can influence the beverages they purchase and how much they are willing to pay.

362.    Defendant intended that Plaintiffs and other consumers would rely on these false representations when choosing to purchase the Products rather than those of competing beverage manufacturers.

363.    Plaintiffs and the Class reasonably relied upon the false representations.

364.    Plaintiffs and other consumers also reasonably relied upon Defendant's false representations since a reasonable consumer can rely on food and beverage companies to comply with federal regulations and state product labeling law.

365.    Reasonable consumers are not required to send samples of food products for analytical laboratory testing before consuming them.

---

[12] https://www.campbells.com/v8/v8-blends-ingredients, last visited September 8, 2023.

CLASS ACTION COMPLAINT

366.    Plaintiffs and the Class had no reasonable way to ascertain that the Products contained artificial flavoring in contradiction to the affirmative false representations on the Product labels.

367.    Defendant as a sophisticated food manufacturer had superior knowledge compared to Plaintiffs and the Class regarding ingredients in the Products.

368.    Plaintiffs and the Class were financially harmed when they paid more for the beverages than they would have paid had Defendant disclosed the presence of an artificial flavoring agent, or simply purchased the Products based on Defendant's unlawful labeling.

369.    Plaintiffs' and the Class's reliance on Defendant's misrepresentations was a substantial factor in causing their financial harm.

### EIGHTH CAUSE OF ACTION:  Negligent Misrepresentation

Cal. Civ. Code §§ 1709-1710 and the common law of all states

(on behalf of the Nationwide Class and the California Sub-Class)

370.    Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

371.    Defendant had a duty to disclose to Plaintiffs, the California Sub-Class, and other U.S. consumers on the front label of the Products its use of artificial flavoring ingredients pursuant to California and federal law.

372.    Defendant was in a superior position regarding that information such that reliance by Plaintiffs, the California Sub-Class, and other U.S. consumers was justified. Defendant possessed the skills and expertise to know this type of information would influence a consumer's purchasing decision.

373.    During the Class Period, Defendant negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the Products, including the use and presence of artificial flavoring.

374.    The label representations negligently misrepresented the Products as if they were exclusively naturally flavored.

375.  Defendant was negligent in distributing Products labeled as if they were exclusively naturally flavored and in failing to identify the Products as artificially flavored.

376.  Defendant represented the Products to Plaintiffs, the California Sub-Class, and other U.S. consumers as solely naturally flavored as if this were true.

377.  Defendant intended for Plaintiffs, the California Sub-Class, and other U.S. consumers to rely on this representation.

378.  Defendant's representations were not true.

379.  Defendant's Products are not exclusively naturally flavored but are instead artificially flavored as described herein.

380.  Defendant failed to secure a reasonable basis for believing and was careless in ascertaining the truth of its representations that the Products were solely naturally flavored and contained no artificial flavorings.

381.  Plaintiffs, the California Sub-Class, and other U.S. consumers could not reasonably have discovered the use of artificial flavoring in the Products.

382.  Plaintiffs, the California Sub-Class, and other U.S. consumers reasonably relied on this representation. They were unaware of Defendant's unlawful misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

383.  Because of the Products' relatively small purchase price, reasonable consumers would not spend the time and money necessary to investigate whether Defendant's representations that the Products did not contain artificial flavoring were false.

384.  Defendants' representations that the Products contain no artificial flavoring would not be obviously false to a reasonable consumer.

385.  Reasonable consumers should not have to subject food products to analytical laboratory testing before consumption to determine whether product label statements are true or false.

CLASS ACTION COMPLAINT

386.  Defendant as a sophisticated manufacturer of beverages had superior knowledge compared to Plaintiffs and the Class regarding the presence of any ingredients in the Products.

387.  Defendant harmed Plaintiffs, the California Sub-Class, and other U.S. consumers as alleged herein. Plaintiffs, the California Sub-Class, and other U.S. consumers would not have purchased the Products or would have paid less for the Products than they did if the true facts had been known.

388.  Plaintiffs, the California Sub-Class, and other U.S. consumers reliance on Defendant's misrepresentations was a substantial factor in that harm.

389.  As a result, Plaintiffs, the California Sub-Class, and other U.S. consumers are entitled to injunctive and equitable relief, rescission or restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

### NINTH CAUSE OF ACTION:  Fraud by Omission

Cal Civ. Code §§ 1709-1710 and the common law of all states with substantially similar laws (on behalf of the Nationwide Class and the California Sub-Class)

390.  Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

391.  Plaintiffs bring this claim for fraud by omission pursuant to California Civil Code §§ 1709-1710 *et seq.* and the common law of all states. The elements of fraud are substantially similar from state to state, thus making multi-state class certification appropriate.

392.  Defendant omitted material facts, in whole or in part, with the intent to induce Plaintiffs and the members of the Class, the California Sub-Class, and other U.S. consumers to purchase the Products and pay premium prices for the Products. Specifically, Defendant actively concealed the truth about the Products by failing to provide the legally required "artificially flavored" disclosure on the front label of the Products as is required by California and federal law.

393.  Because of the Products' relatively small purchase price, reasonable

46

consumers would not and should not have to spend the time and money necessary to investigate whether Defendant's labeling omitting legally-required disclosures of artificial flavor was accurate.

394. Defendant, as a sophisticated food and beverage manufacturer had superior knowledge compared to Plaintiffs and the Class regarding ingredients in the Products.

395. Plaintiffs, the Class, the California Sub-Class, and other U.S. consumers were unaware of this omitted material fact and would not have purchased the Products, or would have paid less for the Products, if they had known of the omitted fact.

396. Plaintiffs, the Class, the California Sub-Class, and other U.S. consumers suffered injuries that were proximately caused by Defendant's omissions of material facts.

397. Defendant's omissions were a substantial factor in causing the harm suffered by Plaintiffs, the Class, the California Sub-Class, and other U.S. consumers as they would not have purchased the Products at all or would have paid less for the Products than they did if these material facts were properly disclosed.

398. As a result, Plaintiffs, the Class, the California Sub-Class, and other U.S. consumers are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

### TENTH CAUSE OF ACTION:  Fraud in the Inducement
Cal Civ. Code §§ 1709-1710; New Jersey Consumer Fraud Act N.J.S.A. 56:8-1, *et seq*
and the common law of all states with similar laws

399. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

400. Defendant represented to Plaintiffs and the Class that the Products were flavored solely with natural juices and natural flavors.

401. These representations were false; the Products contained artificial flavoring.

402. The false representations were seen by Plaintiffs and by all Class members; the false representations were made on the front labels of each of the Products.

47

403. Plaintiffs and the Class purchased the Products based on this false representation.

404. As a sophisticated manufacturer of foods and beverages, Defendant knew that these representations were false: Defendant admits that it uses artificial malic acid to provide tart fruit flavors in the Products.

405. Defendant labeled the Products as if the Products were free of artificial flavors although Defendant knew that the Products contain artificial dl-malic acid that functioned as a flavoring.

406. Defendant willfully deceived Plaintiffs and the Class by failing to disclose the fact that the Products were flavored by an artificial flavoring agent and intended that this deceit would alter consumer purchasing decisions to the detriment of those purchasing the Products.

407. Defendant concealed the fact the Products contained an artificial flavor from Plaintiffs and the putative Class even though Defendant knew that the presence or absence of artificial flavoring is important to a large percentage of American consumers.

408. As a sophisticated manufacturer of foods and beverages, Defendant knew that whether a beverage contains artificial flavoring is a material fact to American consumers which can influence which beverages they purchase and how much they are willing to pay for any given beverage.

409. Defendant intended that Plaintiffs and other consumers would rely on these false representations when deciding to purchase the Products rather than those of competing beverage manufacturers.

410. Reasonable consumers rely on and expect food and beverage manufacturers to comply with federal regulations and state laws requiring the disclosure of artificial flavoring agents.

411. Defendant, a manufacture and mass-marketer of beverage products, had superior knowledge to Plaintiffs and the Class regarding the ingredients in the Products.

412. Defendant's unlawful affirmative representations and fraudulent omissions

CLASS ACTION COMPLAINT

induced Plaintiff and the Class to purchase the Products at the listed retail prices.

413.  Plaintiffs and the Class were financially harmed when they paid more for the beverages than they would have paid had Defendant disclosed the presence of an artificial flavoring agent, or simply would not have purchased the Products at all had Defendant made the legally required disclosures.

414.  Plaintiffs' and the Class's reliance on Defendant's misrepresentations were a substantial factor in causing their financial harm.

415.  Because Plaintiffs and the Class were fraudulently induced to provide monies in exchange for the mislabeled and misrepresented Products, Plaintiffs and Class members were injured financially.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated in California, New Jersey, and in the U.S., pray for judgment against Defendant as follows:

A.    An order confirming that this action is properly maintainable as a class action as defined above, appointing Plaintiffs and their undersigned counsel to represent the Class and the Sub-classes, and requiring Defendant to bear the cost of class notice;

B.    An order declaring that the conduct complained of herein violates the California CLRA;

C.    An order declaring that the conduct complained of herein violates the California UCL;

D.    An order declaring that the conduct complained of herein violates the California FAL;

E.    An order declaring that the conduct complained of herein violates the New Jersey Consumer Fraud Act.

F.    An order declaring that the conduct complained of herein violates corresponding consumer protection laws in states other than California;

49

G. An order declaring that the conduct complained of herein breached express warranties, implied warranties, or both;

H. An order declaring that Defendant is liable for intentional misrepresentations;

I. An order declaring that Defendant is liable for fraud in the inducement;

J. An order requiring Defendant to disgorge any benefits received from Plaintiffs and the Class and any unjust enrichment realized as a result of the improper and misleading labeling, advertising, and marketing of the Products;

K. An order voiding the sale of the Products due to fraudulent inducement of the purchases;

L. An order requiring Defendant to pay restitution and damages to Plaintiffs and Class members so that they may be restored any money which was acquired by means of any unfair, deceptive, unconscionable or negligent acts;

M. An award of punitive damages in an amount to be proven at trial;

N. An award of mandatory treble damages under New Jersey law;

O. An award of mandatory attorneys' fees under New Jersey law;

P. An order enjoining Defendant's deceptive and unfair practices;

Q. An order requiring Defendant to conduct corrective advertising;

R. An award of pre-judgment and post-judgment interest;

S. An award of mandatory attorney fees and costs; and

T. Such other and further relief as this Court may deem just, equitable, or proper.

## IX.   **JURY DEMAND**

Plaintiffs demand a trial by jury on all claims for damages. Plaintiffs do not seek a jury trial for claims sounding in equity.

CLASS ACTION COMPLAINT

Dated:  February 12, 2024

Respectfully Submitted,

By:  */s/ Marc L. Godino*
GLANCY PRONGAY & MURRAY LLP
Marc L. Godino (SBN 182689)
Keven F. Ruf (SBN 136901)
1925 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160
Email:  mgodino@glancylaw.com
Email:  kruf@glancylaw.com

*Attorneys for Plaintiffs and the Proposed Class*

51